**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER EARL STRUNK,**

                        **Plaintiff,**

**v.**                                                **1:16-CV-1496 (BKS/DJS)**

**THE STATE OF CALIFORNIA with Edmund Gerald "JERRY" BROWN Jr., Individually and as Governor; and Alejandro "ALEX" PADILLA, Individually and as Secretary of State (SOS); THE STATE OF NEW YORK with ANDREW M. CUOMO, Individually and as Governor; THE STATE OF NEW YORK BOARD OF ELECTIONS with Republican Peter S. Kosinski / Co-Chair, Democrat Douglas A. Kellner / Co-Chair, Republican Andrew J. Spano / Commissioner and Democrat Gregory P. Peterson / Commissioner; THE CITY OF NEW YORK (NYC); Warren "BILL DE BLASIO" Wilhelm Jr., Individually and as the Mayor of NYC; THE NYC BOARD OF ELECTIONS with Commissioners of Elections: Maria R. Guastella President, Frederic M. Umane Secretary, Jose Miguel Araujo, John Flateau, Ph.D., Lisa Grey, Michael Michel, Michael A. Rendino, Alan Schulkin, Simon Shamoun, Rosanna Vargas, Commissioners; NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; PRESIDENT OF THE UNITED STATES SENATE; UNITED STATES DEPARTMENT OF COMMERCE BUREAU OF THE CENSUS,**

                        **Defendants.**

_____

**Appearances:**

Christopher Earl Strunk
Lake Luzerne, NY 12846
_Plaintiff Pro Se_

Xavier Becerra
Attorney General of California
Tamar Pachter
Supervising Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
*For Defendants The State of California, Governor Edmund G. Brown Jr., and Secretary of State*
*Alex Padilla*

Daniel W. Coffey
Bowitch & Coffey LLC
17 Elk St.
Albany, NY 12207
*For Defendants The City of New York, Warren "Bill de Blasio" Wilhelm Jr., NYC Board of*
*Elections, Maria R. Guastella, Frederic M. Umane, Jose Miguel Araujo. John Flateau, Lisa*
*Grey, Michael Michel, Michael A. Rendino, Alan Schulkin, Simon Shamoun, and Rosanna*
*Vargas*

Richard S. Hartunian
United States Attorney
John D. Hoggan, Jr.
Assistant United States Attorney
445 Broadway
Albany, NY 12201
*For Defendants The National Archives and Records Administration, President of the United*
*States Senate, and the United States Department of Commerce Bureau of the Census*

Eric T. Schneiderman
Attorney General of the State of New York
Joshua E. McMahon
Assistant Attorney General
The Capitol
Albany, NY 12224
*For Defendants The State of New York, Andrew M. Cuomo, The State of New York Board of*
*Elections, Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano and Gregory P. Peterson*

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

Plaintiff Christopher Earl Strunk, proceeding *pro se*,[1] filed a Complaint under 42 U.S.C.

§§ 1983–86 and various other statutes seeking injunctive relief and alleging, *inter alia*, that

certain legislation in the States of New York and California enabled illegal aliens to vote in the

2016 presidential election and consequently "dilute[d] and disproportionately diminishe[d]

Plaintiff's vote property in the New York electoral college." (Dkt. No. 1). In addition to an order

restraining California and New York from delivering their "Elector Tall[ies]" to be counted in

the 2016 presidential election, Plaintiff seeks an order reducing "US House representation to (1)

House member each for California and New York . . . until the 2020 decennial census allotment

for the . . . reapportionment of house districts without illegal aliens."[2] (*Id.*). The Complaint

---

[1] Plaintiff is an experienced pro se litigant; he has initiated and participated in numerous lawsuits in the Northern, Southern, and Eastern Districts of New York, *Fitzgerald v. Berman*, 1:02-CV-00926 (N.D.N.Y. filed July 16, 2002); *Loeber v. Spargo*, 1:04-CV-01193 (N.D.N.Y. filed Oct. 15, 2004); *Forjorne v. State of California*, 1:06-CV-01002 (N.D.N.Y. filed Aug. 17, 2006); *Strunk v. U.S. Dept. of Housing*, 1:99-CV-06840 (E.D.N.Y. filed October 20, 1999); *Strunk v. CIA*, 1:08-CV-1196 (E.D.N.Y. filed March 20, 2008); *Strunk v. NYS Board of Elections*, 1:08-cv-04289 (E.D.N.Y. filed October 30, 2008); *Strunk v. United States Postal Service*, 1:08-CV-01744 (E.D.N.Y. filed April 18, 2008); *Strunk v. United States House of Representatives*, 1:00-CV-07177 (E.D.N.Y. Dec. 1, 2000); *Thomas v. Federal Reserve Bank of New York*, 1:07-cv-01171 (E.D.N.Y. filed Mar. 20, 2007); *Haase v. Silver*, 1:03-CV-01320 (S.D.N.Y. filed Feb. 18, 2004); *Strunk v. Mills*, 1:04-CV-4881 (S.D.N.Y. filed June 22, 2004); *Strunk v. Druskin*, 1:15-CV-06817 (S.D.N.Y. filed Aug. 27, 2015), as well as in the District of Columbia, *Strunk v. Obama*, 1:10-CV-00486 (D.D.C. filed Mar. 24, 2010); *Strunk v. U.S. Dept. of State*, 1:14-CV-00995 (D.D.C. filed June 10, 2014); *Strunk v. United States Dept. of State*, 1:08-CV-2234 (D.D.C. filed Dec. 29, 2008); *Strunk v. New York Province of the Society of Jesus*, 1:09-CV-01249 (D.D.C. filed July 7, 2009); *Strunk v. United States Dept. of Commerce*, 1:09-CV-01295 (D.D.C. filed July 13, 2009); *Strunk v. United States Dept. of Interior*, 1:10-CV-00066 (D.D.C. filed Jan. 14, 2010).

[2] In *Wisconsin v. City of New York*, the Supreme Court explained:

> The Constitution requires an "actual Enumeration" of the population every 10 years and vests Congress with the authority to conduct that census "in such Manner as they shall by Law direct." Art. I, § 2, cl. 3. Through the Census Act, 13 U.S.C. § 1 *et seq.*, Congress has delegated to the Secretary of the Department of Commerce the responsibility to take "a decennial census of [the] population in such form and content as he may determine." § 141(a) . . . .

> The Constitution provides that the results of the census shall be used to apportion the Members of the House of Representatives among the States. *See* Art. I, § 2, cl. 3 ("Representatives shall be

asserts seven causes of action, including denial of substantive due process and equal protection and conspiracy to deny equal protection, in violation of the Fourteenth Amendment; infringement of speech and association rights, in violation of the First Amendment; "disproportionate dilution of House Representation" and "vote property using illegal aliens for partisan unjust enrichment;" and "insurrection using illegal aliens against the United States." (*Id.* at pp. 25–32). Plaintiff names as Defendants: the State of California, "Jerry" Brown, the Governor of California, and Alex Padilla, the California Secretary of State (the "California Defendants"); the State of New York, Andrew Cuomo, the Governor of New York, and the State of New York Board of Elections and its Commissioners (the "New York Defendants"); the City of New York, and Bill DeBlasio, the Mayor of New York City, the New York City Board of Elections and its Commissioners (the "NYC Defendants"); and the National Archives and Records Administration, the President of the United States Senate, and the United States Department of Commerce Bureau of the Census (the "Federal Defendants"). (Dkt. No. 1). Plaintiff requests that a three-judge panel be convened under 28 U.S.C. § 2284 to adjudicate this case. (*Id.*). Presently before the Court are the parties' letter briefs concerning whether a three-judge panel is required under § 2284 (Dkt. Nos. 32, 33, 34, 35), as well as Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim). (Dkt. Nos. 23, 25,

---

apportioned among the several States  according to their respective Numbers."); Amdt. 14, § 2 ("Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State. "). Because the Constitution provides that the number of Representatives apportioned to each State determines in part the allocation to each State of votes for the election of the President, the decennial census also affects the allocation of members of the electoral college. *See* Art. II, § 1, cl. 2 ("Each State shall appoint a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress.").

*Wisconsin v. City of N.Y.*, 517 U.S. 1, 5–6 (1996) (internal ellipses omitted).

26, 29). Plaintiff opposes the motions to dismiss. (Dkt. No. 25). For the reasons that follow Defendants' motions to dismiss are granted and the Complaint is dismissed.

## II.   COMPLAINT

### A.   Allegations

Though disjointed and incomprehensible at points, the *pro se* Complaint, construed liberally, contains the following allegations: Plaintiff is a "person domiciled and registered to vote in the State of New York." (Dkt. No. 1, ¶ 1). The "1965 Immigration and Nationality Laws" were enacted to protected United States citizens "against economic injury brought by overwhelming invasion of aliens into the USA." (*Id*. at ¶ 25). "De facto public officers," however, failed to enforce those laws. (*Id*.). The Complaint further alleges that unlike the 1990 decennial census, the 2000 and 2010 decennial censuses "did not ask if a person is a US Citizen." (*Id*. at ¶¶ 39–40).

According to the Complaint, California and New York, which are "among a minority of other outlaw States," (*id*. at ¶ 41), and have two of the "largest unauthorized immigrant populations" in the country, (*id*. at ¶ 42), are "*sanctuary* States for illegal aliens that have their domicile in a foreign state." (*Id*. at ¶ 41). "[T]ogether the outlaw States have a substantial majority vote for the Democrat [sic] Party . . . because Congress has illegally granted additional U.S. House representation as if illegal aliens had a domicile within the USA." (*Id*.).

The Complaint identifies the slates of electors for various political parties in California and New York, (*id*. at ¶¶ 26–32, 33–38), and alleges, among other things, that the California "Republican Party Elector Slate for *Trump-Pence* is not the same as that of the [American Independent Party]" and does not "meet the requirements of the California Election Code." (*Id*.

at ¶¶ 28–29). The Complaint contains similar allegations under the New York Election Code concerning the slates of electors in New York. (*Id*. at ¶¶ 34–38).

The Complaint alleges that in 2013, "California started issuing State Identification to illegal aliens," and in 2015, enacted legislation, "Assembly Bill 1461," which enabled illegal aliens to vote in the 2016 presidential election cycle, in violation of "Federal Election Laws, especially related to 8 U.S.C. § 1324." (*Id*. at ¶¶ 44–45). Plaintiff alleges that by allowing illegal aliens to vote in the 2016 elections, the California Defendants have "abridge[d] the legal right of every legal American citizen living in California to enjoy the full weight and power of their vote." (*Id*. at ¶ 46). Consequently, Plaintiff asserts, the California 2016 presidential election results are "disqualified" and "electors cannot be legally or ethically counted in the 2016 election." (*Id*. at ¶ 48).

According to the Complaint, in 2014, the NYC Defendants "started issuing NYC Identification to illegal aliens." (*Id*. at ¶ 51). The Complaint also describes various aspects of the New York State Election Law, asserting, for instance, that "it is illegal to challenge a person attempting to vote once he/she has registered to vote except by affidavit ballot and or provisional ballot under the Help America Vote Act" ("HAVA"), 42 U.S.C. § 15301 *et seq*. (*Id*. at ¶ 52). The Complaint alleges that, in violation of New York Election Law and HAVA, which require "any personal registration to vote be based only upon his/her honor at a domicile without any other Public Officer verification may thereafter vote without challenge at the polling place," NYC Mayor DiBlasio "publicly advertised that any person with a NYC Identification intending to vote at the General Election may obtain a State of New York Identification." (*Id*. at ¶ 55).[3]

---

[3] The paragraphs that follow this allegation appear to address how a minority political party gains party status in the states of New York and Georgia, and allege that the "Republican-Democrat Party bi-partisan power sharing conspiracy" harms "New York ballot access." (Dkt. No. 1, ¶¶ 56–58). It is not clear how this allegation relates to the claims Plaintiff asserts in this case.

The Complaint also purports to provide statistics concerning presidential voting patterns in New York from 2000 to 2012, which generally indicate that "Democratic" candidates received a higher percentage of votes than Republican candidates, and "an analysis of New York's voting record in presidential elections from 1900 to 2016." (*Id.* at ¶¶ 59–60). Additionally, it recounts "voting trends" from the 2016 presidential election, and the Republicans' nationwide "major victories at the federal level on November 8, 2016, winning the presidency and maintaining control of both the U.S. House and U.S. Senate." (*Id.* at ¶¶ 59–65). Finally, it refers to a lawsuit pending in New York State Supreme Court, concerning the "NYC Identification Program . . . inter alia for non-citizens," and a lawsuit pending in the United States District Court for the Northern District of California, which, according to Plaintiff, arises from "the California law that tells presidential electors to vote in the electoral college for the nominee of their party." (*Id.* at ¶¶ 66–67).

## B.      Causes of Action

The First Cause of Action alleges that the California and New York Defendants denied Plaintiff substantive due process in connection with the "public administration and enforcement" of their respective election codes and "dilute[d] and disproportionately diminish[ed] individual vote property and expectation of a fair ballot at the" November 8, 2016 presidential election. (Dkt. No. 1, ¶ 73). Plaintiff seeks to preclude "any person from holding any public office of profit or trust." (*Id.* at ¶ 74).

In the Second Cause of action, Plaintiff alleges that Defendants denied him equal protection of the law by failing "to have a uniform joint resolution for each elector slate done before the 8 November 2016 General Election with proper notice to the voters." (Dkt. No. 1, ¶ 77).

In the Third Cause of Action, Plaintiff alleges that Defendants conspired to deny equal protection by allowing and facilitating "aliens illegally voting at the citizen's polling precincts for the purpose of depriving, either directly or indirectly, any citizen person or citizen class and or citizen persons of the equal protection of the laws." (Dkt. No. 1, ¶ 80). As a remedy, Plaintiff seeks the proportionate reduction of the "House members to be elected at large until the 2020 decennial census allotment for the respective state's reapportionment of house districts." (*Id*. at ¶ 81).

In the Fourth Cause of Action, Plaintiff alleges that Defendants aided and abetted "the invasion of illegal aliens by provision and theft of public funds in the enticement for the invasion of illegal aliens to suppress citizen Plaintiff's speech and association among those similarly situated," in violation of the First Amendment. (Dkt. No. 1, ¶ 85).

In the Fifth Cause of Action, Plaintiff alleges "disproportionate dilution of House representation using illegal aliens for partisan unjust enrichment," and that as a result of Defendants' actions, his "vote property" in the Electoral College has been diluted and disproportionately diminished, in violation of 8 U.S.C. § 1324, 2 U.S.C. § 2a(c)(4), and 18 U.S.C. § 611. (Dkt. No. 1, ¶¶ 87–94).

In the Sixth Cause of Action, Plaintiff alleges that Defendants "dilute[d] and disproportionately diminish[ed] vote property using aliens." (Dkt. No. 1, ¶ 96). Plaintiff asserts that the remedy "is to order a special master to compare all Defendants' records to ascertain the scope of illegal aliens both illegally resident in any or every state of the several states and who have participated in elections." (*Id*. at ¶ 98). Plaintiff further seeks sanctions and requests a "cutoff [of] Federal funds to each and every state of the several states [sic] malicious act." (*Id*. at ¶ 99).

In the Seventh Cause of Action, Plaintiff alleges that Defendants "engaged in insurrection using illegal aliens against the United States." (Dkt. No. 1, ¶ 102). Plaintiff seeks an order reducing "US House representation to (1) House member each for California and New York respectively and thereafter, to be elected at large until the 2020 decennial census allotment for the respective state's reapportionment of house districts without illegal aliens." (*Id*. at ¶ 103).

As a remedy for the alleged violations, Plaintiff seeks to enjoin: (1) the "National Archives and Records Administration (NARA) Archivist" from delivering the "Elector Tally of either California or New York to the US House as substantially complete;" (2) the "President of the United States Senate" from delivering the "Elector Tally of either California or New York to the US Senate as substantially complete;" (3) New York and California from delivering their "Elector Tall[ies]" to the "NARA Archivist and or President of the US Senate;" (4) and Defendants "from destroying or alternating any record of the 2016 Election Cycle back until the 2012 Election Cycle." (Dkt. No. 1, p. 33). Plaintiff also seeks an order directing: (1) the United States Attorney and the Attorneys General of California and New York to "assist the court in comparison of the Voter rolls and Motor Vehicle records of the respective state[s] . . . for comparison with Federal Immigration records, National Voter Registration database, Motor Vehicle database and County voter registrar records;" and (2) the "US Bureau of the Census Director . . . to deliver an accurate certified record of all non-citizens and or illegal aliens enumerated in every state  . . . since the 2000 census . . . ." (*Id*. at p. 34). Plaintiff previously moved for a temporary restraining order awarding this relief pending trial. (Dkt. No. 8, pp. 6–7). The Court denied Plaintiff's motion in a Memorandum-Decision and Order entered on February 22, 2017, and directed the parties to brief the issue of whether a three-judge panel is required in this case under 28 U.S.C. § 2284. (Dkt. No. 24).

III.    DISCUSSION

A.    Three-Judge Panel – 28 U.S.C. § 2284(a)

Section 2284 provides, in relevant part: "A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). It further provides: "Upon the filing of a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge." *Id*. at § 2284(b)(1).

"[T]he three-judge requirement in 22 U.S.C. § 2284 is jurisdictional." *Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008). The Supreme Court has instructed that:

> The subsequent provision of § 2284(b)(1), that the district judge shall commence the process for appointment of a three-judge panel 'unless he determines that three judges are not required,' need not and therefore should not be read as a grant of discretion to the district judge to ignore § 2284(a). It is not even framed as a proviso, or an exception from that provision, but rather as an administrative detail that is entirely compatible with § 2284(a).

*Shapiro v. McManus*, 136 S. Ct. 450, 454 (2015). Thus, in reviewing a request for three judges, the court need only "determine . . . whether the request for three judges is made in a case covered by § 2284(a)—no more, no less." *Id*. at 455 (internal quotation marks and alteration omitted). However, "[a]bsent a substantial federal question, even a single-judge district court lacks jurisdiction, and '[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts.'" *Id*. (quoting *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 100 (1974)). The Supreme Court has described this standard as a "low bar." *Id*. at 456. The Court has "long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing

10

to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former." *Id*. at 455 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). The Court has equated "constitutional insubstantiality . . . with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Id*. (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)).

In the Complaint, Plaintiff asserts that a three-judge panel is required because this action challenges "the constitutionality of the apportionment of California and New York congressional districts associated with the 2016 State's [President of the United States/Vice President of the United States] Electoral College under the 14th Amendment; and 28 U.S.C. § 1343." (Dkt. No. 1, p. 3). Plaintiff further asserts that "Congress has illegally granted additional U.S. House representation as if illegal aliens had a domicile within the USA." (*Id.* at ¶ 41). The Complaint also contains a request to "proportionately reduce House members to be elected at large until the 2020 decennial census allotment for the respective state's reapportionment of house districts."[4] (*Id*. at ¶ 81; *see* ¶ 103). In the Sixth Cause of Action, alleging that the Defendants misused public funds to entice aliens to vote, Plaintiff asserts that the Defendants gerrymandered, creating majority-minority districts that include more aliens and upstate districts that include fewer aliens. (*Id*. at ¶ 97).

The Defendants do not agree about whether this is an action "challenging the constitutionality of the apportionment of congressional districts," within the meaning of 28 U.S.C. § 2284(a). The Federal Defendants argue that it is not because "most of Plaintiff's causes of action rest on the allegation that California and New York issued identification cars [sic] to 'illegal aliens' which enable them to register and vote in the 2016 presidential election." (Dkt.

---

[4] This request for relief appears in connection not with Plaintiff's claims regarding apportionment but with his allegation that Defendants conspired to allow noncitizens to vote in violation of the equal protection clause. (Dkt. No. 1, ¶ 81). Reading the Complaint liberally, however, the Court construes it as part of his reapportionment claim.

No. 34, p. 2). The City and State Defendants argue that "the case, on its face, presents a challenge to the apportionment of congressional districting, and thus implicates Section 2284." (Dkt. No. 32, p. 2).  While the Complaint is, as the Federal Defendants argue, primarily focused on alleged conduct that led to alleged voting by illegal aliens, there are a few scattered references to apportionment and the inclusion of illegal aliens in the census. The Court notes that some courts have expressed doubt as to whether a challenge to a *census practice* falls within § 2284(a). *See*, *e.g.*, *Federation for American Immigration Reform v. Klutznick*, 486 F. Supp. 564, 577-78 (D.D.C. 1980) (three-judge court) (noting that a challenge to a census practice that produces the data on which apportionment is based "does not directly" affect apportionment and "does not seem" to fall within § 2284); *Adams v. Clinton*, 26 F. Supp. 2d 156, 161 (D.D.C. 1998) (finding that a three-judge court was required for an action challenging the *existing* allocation of representatives and distinguishing actions challenging census practices that *might* affect apportionment); *Commonwealth of Massachusetts v. Mosbacher*, 785 F. Supp. 230, 236-37 (D. Mass. 1992) (noting serious doubts about whether Congress intended to require three-judge courts for all census litigation).  The Court, however, need not definitively resolve whether this action falls within § 2284(a) because even it if were applicable, the Complaint must be dismissed for lack of jurisdiction.

### B.    Motion to Dismiss – Rule 12(b)(1)

Defendants argue that a three-judge panel is "not required" and this action must be dismissed because Plaintiff lacks standing and the Complaint is moot. The Supreme Court has "always recognized a single judge's power to dismiss a complaint for want of general subject-matter jurisdiction." *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 97 n.14 (1974); *see also* 17A C. Wright & A. Miller, Federal Practice and Procedure § 4235 (3d ed.) ("The single

judge can also dismiss if the plaintiff lacks standing or the suit is otherwise not justiciable in the district court."); *Giles v. Ashcroft*, 193 F. Supp. 2d 258, 262–64 (D.D.C. 2002) (explaining that because "[a]n individual district court judge may consider threshold jurisdictional challenges before convening a three-judge panel" and the plaintiff alleged only "general grievances," the plaintiff failed to demonstrate standing and a three-judge court was "not warranted"). Accordingly, the Court first addresses Defendants' motions to dismiss for lack of subject matter jurisdiction.

## 1. Standard

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). "Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider competent evidence outside the pleadings, such as affidavits and exhibits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks and citation omitted). Once subject matter jurisdiction is challenged, the plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113).

2.      **Standing**

The New York, NYC, and Federal Defendants move to dismiss the Complaint on the
ground that Plaintiff lacks standing. (Dkt. No. 23-1, p. 14; 26-1, p. 6; 29-1, p. 7). "Because
standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue
in all cases." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991)
(citing *Valley Forge Christian College v. Americans United for Separation of Church and State,
Inc.*, 454 U.S. 464, 471–76 (1982)). "The judicial power of the United States, and thus the
jurisdiction of federal courts, is limited by Article III of the Constitution to "Cases and
Controversies." *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013). "An important component
of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is
standing." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir.
2006).

"[T]he doctrine of standing . . . requires every federal plaintiff to establish, 'for each
claim he seeks to press,' a personal injury that is fairly traceable to the defendant's conduct and
likely to be redressed by the requested relief." *Ret. Bd. of the Policemen's Annuity & Benefit
Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 159 (2d Cir. 2014) (quoting
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). To establish Article III standing, a
plaintiff must show "(1) an 'injury in fact,' (2) a 'sufficient causal connection between the injury
and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a
favorable decision.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (quoting
*Susan B. Anthony List v. Driehaus*, ___U.S.___, 134 S.Ct. 2334, 2341 (2014)).  To be sufficient,
an injury must be "an invasion of a legally protected interest which is (a) concrete and
particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *Montesa v.*

14

*Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (internal mark omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  A mere generalized grievance shared by the public at large is insufficient to establish a justiciable case or controversy.  *Lujan*, 504 U.S. at 573-74; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___U.S.___, 134 S.Ct. 1377, 1387 n.3 (2014).

The allegations in the Complaint fail to identify any concrete harm that Plaintiff has suffered. The First, Third, Fifth, Sixth, and Seventh Causes of action stem from Plaintiff's claims regarding Defendants' alleged "use [of] illegal alien voters at the 8 November 2016 General Election," and inclusion of illegal aliens in the decennial census.(Dkt. No. 1, pp. 2, 25). Plaintiff claims that the "use" of illegal aliens "at the . . . General Election" "dilute[d] and disproportionately diminish[ed] individual vote property and expectation of a fair ballot" in violation of his right to substantive due process under the Fourteenth Amendment. (Dkt. No. 1, pp. 2, 25). According to the Complaint, because total population, including illegal aliens, as determined by the most recent decennial census is used by New York and California to apportion congressional districts, Plaintiff, as a resident of "upstate New York" where there are "nominal non-citizens in comparison" to the New York City area, suffers from vote dilution. (Dkt. No. 1, pp. 29–31). The Complaint further alleges that identification programs in New York City and California contribute to the influx of illegal aliens to downstate New York and California. (*Id.*). This, Plaintiff asserts, further skews the population in those areas in favor of assigning greater House representation and dilutes his vote. (*Id.*).

In similar cases—where plaintiffs have claimed injury based on (1) their status as voters and lawful residents and (2) the failure to exclude from the apportionment base illegal aliens or non-citizens counted in the census—courts have found standing lacking. In *Federation for*

*American Immigration Reform v. Klutznick*, the plaintiffs alleged that "the census method and resulting apportionment is . . . unconstitutional in that illegal aliens should be separately counted and excluded from the apportionment base." 486 F. Supp. 564, 569 (D.D.C. 1980). The plaintiffs asserted standing based on their "status as voters and lawful residents," and alleged "that some one or more of them will likely suffer the loss of at least one national or state representative, and receive proportionately fewer federal benefits if the census proceeds as planned than if illegal aliens were counted and then eliminated from the apportionment base." *Id*. The three-judge panel found that the harm the plaintiffs alleged they would suffer and the extent to which a state would "benefit by the relief requested" was "a matter of speculation." *Id*. at 570. The court explained:

> While the plaintiffs estimate that between one and sixteen congressional seats will be affected depending on the inclusion of illegal aliens, they can do no more than speculate as to which states might gain and which might lose representation . . . . Depending on how many illegal aliens there are, where they live, how accurate the census count is, and the interplay of all the other population factors which might affect apportionment, any number of states might benefit by the relief requested . . . . Therefore, none of the plaintiffs are able to allege that the weight of his or her vote in the next decade will be affected by the expected method of taking the census and apportioning congressional seats.

*Id*.

In *Strunk v. United States Department of Commerce*, one of Plaintiff's prior cases, Plaintiff alleged that the defendants were "counting in the 2010 census persons whom [he] labels 'tourists.' Tourists are neither citizens nor permanent residents of the United States, and according to plaintiff, they should not be counted for the purpose of apportioning Congressional representation." No. 09-1295, 2010 WL960428, at *1, 2010 U.S. Dist. LEXIS, at *2 (D.D.C. Mar. 15, 2010). The court found that Plaintiff lacked standing, explaining:

> The basis for his assertions that 'tourists' are to be counted in the 2010 Census is unclear, and the potential impact of their inclusion is speculative at best. His challenge to the 2010 Census raises an "abstract question[] of wide public significance," and thus he fails to allege an injury in fact, that is, "an invasion of a

16

> legally protected interest which is (a) concrete and particularized, and (b) actual
> or imminent, not conjectural or hypothetical."

2010 WL 960428, at *3, 2010 U.S. Dist. LEXIS, at *9–10 (quoting *Warth v. Seldin*, 422 U.S.

490, 500 (1975), *Lujan*, 504 U.S. at 560 (internal citation omitted)).

In *Sharrow v. Brown*, the Second Circuit found the plaintiff, who alleged that the Census

Bureau had failed to count and exclude disenfranchised voters from the apportionment base,

lacked standing. 447 F.2d 94 (2d Cir. 1971). The plaintiff, who also sought a three-judge panel,

contended that "the second sentence of Section 2 of the Fourteenth Amendment (hereinafter

designated for convenience, 14/2) requires the Census Bureau to compile statistics on the number

of male adults in each State whose right to vote is denied or abridged so that the House of

Representatives may be properly apportioned according to the formula mandated by 14/2." *Id*. at

96. The plaintiff argued "that the proper enforcement of 14/2 [would] result in an increase in the

representation of New York State in the House of Representatives, and therefore, that,

derivatively he, as a citizen of New York, will receive an augmented voice in congressional

matters." *Id*. The Second Circuit affirmed the district court's denial of the plaintiff's request for a

three-judge panel and dismissal of the complaint on the basis that the plaintiff lacked standing.

The Court explained:

> To establish standing in the present case, Sharrow would have to show, at least
> approximately, the apportionment his interpretation of 14/2 would yield, not only
> for New York but for every other State as well. This would necessitate a state-by-
> state study of the disenfranchisement of adult males, a task of great proportions.
> And even after approximate nation-wide reapportionment figures were derived, it
> might well be that, because of population shifts, or because New York itself
> disenfranchised a portion of its adult males, New York's representation would not
> be increased as Sharrow claims.
> . . .
>
> Sharrow has introduced no evidence that New York's loss of six representatives
> over the past thirty years is the result of anything other than shifts in population.
> Without such evidence, we cannot say that Sharrow has established his standing

to seek the relief he requests. His sincere effort, an effort which we respect, to rectify what he considers a grave constitutional mistake is not enough. He must establish that the failure to enforce 14/2 has resulted in a detriment to his rights of representation in Congress and this he has failed to do.

*Id.* at 96–97.[5]

In this case, Plaintiff alleges, as best the Court can discern, that Defendants "entice[d]" via identification card programs and other means "the invasion of illegal aliens" to the New York City area and to the State of California. (Dkt. No. 1, ¶ 85). These illegal aliens were counted in the 2010 decennial census, which, according to Plaintiff, unconstitutionally increased downstate New York's and California's total population figures, apportionment, and number of seats in the United States House of Representatives, leading to the "disproportionate[] dilut[ion of] [Plaintiff's] intra and interstate representation" and "vote property." (Dkt. No. 1, p. 31). These allegations fail to show that Plaintiff suffered any concrete injury. The alleged causal connection between governmental identification card programs or the inclusion of illegal aliens in the decennial census and the dilution of Plaintiff's vote and congressional representation is too attenuated to allow a conclusion that his alleged injury could be redressed by a favorable decision in this case. *See Fed'n for Am. Immigration Reform*, 486 F. Supp. at 572 ("[W]hile we may assume, and indeed be convinced that there will be some effect on apportionment by the inclusion of illegal aliens in the population base, the plaintiffs have failed to demonstrate with requisite specificity where that effect will fall, so that we would be able to find a 'concrete injury' to some particular resident of some particular state."). At most, the Complaint raises "abstract questions of wide public significance," *Warth v. Seldin*, 422 U.S. at 500, that are best characterized as generalized grievances about the inclusion of illegal aliens in census figures and

---

[5] The Court notes that the Supreme Court recently rejected an argument that a state must draw its legislative districts from the voter-eligible population. *Evenwel v. Abbott*, ___U.S.___, 136 S.Ct. 1120, 1123 (2015) ("[B]ased on constitutional history, this Court's decisions, and longstanding practice . . . a State may draw its legislative districts based on total population" using numbers from the decennial census.)

the identification card programs in New York City and California.[6] Thus, the Court concludes that Plaintiff lacks standing, and the claims concerning the Defendants' dilution of his vote using illegal aliens (the First, Third, Fifth, Sixth, and Seventh Causes of Action) must be dismissed.

Likewise, Plaintiff lacks standing to bring claims concerning the Electoral College. and 2016 General Election. The Second Cause of Action alleges that Defendants denied Plaintiff "equal protection among those citizens similarly situated" by failing "to have a uniform joint resolution for each elector slate done before the 8 November 2016 General Election with proper notice to the voters," in violation of the Fourteenth Amendment. (Dkt. No. 1, p. 26). These are generalized grievances about the administration of the General Election and the Electoral College that appear to concern the country as a whole and do not contain facts alleging that Plaintiff suffered injury to a concrete and particularized legally protected interest. Thus, the Second Cause of Action is dismissed.

The same deficiency is present in Plaintiff's Fourth Cause of Action, in which Plaintiff alleges that Defendants have infringed his "speech and association rights among those citizens similarly situated" in violation of the First Amendment. (Dkt. No. 1, p. 28). This cause of action, like the others, arises from Plaintiff's allegation that Defendants have "aid[ed] and abet[ted] the "invasion of illegal aliens" and thereby violated his rights to freedom of speech and association. (*Id*. at p. 29). In the absence of a concrete or particularized injury to his First Amendment rights, Plaintiff lacks standing to bring this claim.

---

[6]In *Forjorne v. California*, another of Plaintiff's prior cases, Plaintiff, and others, alleged "that various states . . . failed to prevent non-citizens from voting in elections" and that "by allowing non-citizens," including illegal aliens, "to vote, their votes have been effectively diluted." No. 1:06-CV1002LEK/RFT, 2010 WL 653651, at *2, 2010 U.S. Dist. LEXIS 14593, at *9 (N.D.N.Y. Feb. 19, 2010), *aff'd*, 425 F. App'x 73 (2d Cir. 2011). The district court found that the plaintiffs lacked standing because the complaint "consistently fail[ed] to allege any concrete harm personally suffered by Plaintiffs or explain how such harm could be traceable to the Defendants," alleged only "non-particularized injuries and generalized grievances," and left "unclear how any of the alleged harms could be redressed by a favorable result in the courts." *Id*. at *4, 2010 U.S. Dist. LEXIS 14593, at *17.

Since Plaintiff lacks standing for any of his claims, a three-judge panel is not required.

### 3.    Mootness

Even supposing that Plaintiff had standing to bring claims with respect to the 2016 presidential election and elector tallies, as the Court discussed in its prior decision, these claims are moot. (Dkt. No. 24, pp. 12–13). The Electoral College voted on December 19, 2016, and the President and Vice President were elected and have been inaugurated. *See Pope v. Cty. of Albany*, 687 F.3d 565, 569 (2d Cir. 2012) ("'The occurrence of the action sought to be enjoined normally moots the request for preliminary injunctive relief because this Court has no effective relief to offer once the action has occurred.'") (quoting *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.)). It is therefore "impossible for the court to grant any effectual relief whatever to the prevailing party." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1998). While there is an "exception to mootness for cases 'capable of repetition, yet evading review,'" *In re Zarnel*, 619 F.3d 156, 163 (2d Cir. 2010) (quoting *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001)), there is no basis on which to find that this exception applies here. *See Strunk v. United States House of Representatives*, 24 F. App'x 21, 22–23 (2d Cir. 2001) ("Strunk's request for injunctive relief is moot because the presidential electors were already seated at the December 18, 2000 meeting of the electoral college and the President and Vice President of the United States have been elected."). If the "same controversy" arises in connection with the 2020 elections, Plaintiff "can file a timely petition for relief at that time." *Id.* at 23.[7]

---

[7] Because Plaintiff lacks standing to pursue the claims alleged in the Complaint and the claims concerning the Electoral College are moot, the Court does not reach Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim.

### C.        Motion to Dismiss – Rule 12(b)(2)

The California Defendants move to dismiss for lack of personal jurisdiction. (Dkt. No. 25-1). "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). *See also Pitts v. O'Geary*, 914 F. Supp. 2d 729, 732 (E.D.N.C. 2012) (acknowledging that while "only a three-judge court may rule on the merits of a claim" failing under § 2284, "the court, sitting alone, may consider whether it has personal jurisdiction over defendants and dismiss the complaint if it lacks such jurisdiction.").

"The plaintiff's obligation varies . . . depending on whether the jurisdictional determination is made prior to or subsequent to discovery." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 356 (S.D.N.Y. Mar. 9, 2009) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Prior to discovery, a plaintiff can defeat a Rule 12(b)(2) motion to dismiss by pleading 'good faith, legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction.'" *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618(KMW)(HBP), 2010 WL 2507025, at *7, 2010 U.S. Dist. LEXIS 61452, at *29 (S.D.N.Y. June 21, 2010) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998)). This is in contrast to the standard that applies to a Rule 12(b)(2) motion after jurisdictional discovery has been conducted, at which point "a plaintiff's prima facie showing must be 'factually supported;' that is, it must 'include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (internal punctuation and footnote omitted).

"In a federal question case where a defendant resides outside the forum state, a federal

court applies the forum state's personal jurisdiction rules if the federal statute does not

specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d

1105, 1108 (2d Cir. 1997) (internal quotation marks omitted). New York's long arm statute

provides that courts may exercise personal jurisdiction over a non-domiciliary who "commits a

tortious act without the state causing injury to person  . . . within the state" if he or she:

> (i) regularly does or solicits business, or engages in any other persistent course of
> conduct, or derives substantial revenue from goods used or consumed or services
> rendered, in the state, or (ii) expects or should reasonably expect the act to have
> consequences in the state and derives substantial revenue from interstate or
> international commerce.

N.Y. C.P.L.R. § 302(a)(3). Here, Plaintiff alleges no facts indicating that the State of California,

the Governor, or Secretary of State regularly engages in a "persistent court of conduct," "derives

substantial revenue" from goods or services rendered in New York, or derives "substantial

revenue from interstate or international commerce." *Id*.

Even if Plaintiff could show that New York allowed for personal jurisdiction, there is no

basis on which to find that he could satisfy the due process test for personal jurisdiction, which

has two parts: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Waldman v.*

*Palestine Liberation Organization*, 835 F.3d 317, 331 (2d Cir. 2016). The court must first

determine whether the defendant has sufficient contacts with the forum state to justify the court's

exercise of personal jurisdiction. *Id*. The reasonableness inquiry asks whether the assertion of

personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that

is, whether it is reasonable under the circumstances of the particular case." *Id*. (quoting *Daimler*

*AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 754 (2014)). Plaintiff presents no arguments or

allegations showing the California Defendants' contacts with New York or that personal

jurisdiction is reasonable under the circumstances of this case, which involve a New York voter. *See Smith v. United States*, No. 1:12-CV-00846 LEK, 2012 WL 6597835, at *4, 2012 U.S. Dist. LEXIS 178419, at *11 (N.D.N.Y. Dec. 18, 2012) (finding that the court "clearly lacks personal jurisdiction over the New Hampshire Defendants under both prongs of the jurisdictional inquiry," in § 1983 action where the plaintiff alleged no facts indicating the New Hampshire defendants had a connection with the State of New York) *aff'd and remanded on different ground*, 554 F. App'x 30 (2d Cir. 2013); *Forjone*, 2010 WL 653651, at *5, 2010 U.S. Dist. LEXIS 14593, at *20 (finding the plaintiffs failed to assert a basis for personal jurisdiction over the States of Texas, California, Oregon, Arizona, Nevada, and New Mexico, where the plaintiffs failed to allege conduct by the States "that caused harm to them" and did not "reside in any of these States").  Similarly, there is no basis for general jurisdiction over the California Defendants.[8] *Waldman*, 835 F.3d at 332-33.

## IV.     AMENDED COMPLAINT

Rule 15(a)(2) instructs that "courts should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "'A pro se complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). The Second Circuit has identified the following principles as governing a court's determination as to whether to allow a pro se litigant to amend: "that motions to amend should be granted freely in the

---

[8] The State of California moves to dismiss on the basis that Plaintiff's claims against it are barred by sovereign immunity under the Eleventh Amendment. (Dkt. No. 25-1, p. 10). Having concluded that Plaintiff lacks standing and that there is no personal jurisdiction over the California Defendants, the Court does not reach that issue. *See*, *e.g.*, *Duckworth v. State Bd. of Elections*, 213 F. Supp. 2d 543, 548 (D. Md. 2002) (declining to address "defendants' arguments based on sovereign immunity" after concluding that the plaintiff's claims were insubstantial and a three-judge panel was not required), *aff'd sub nom. Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769 (4th Cir. 2003).

interests of justice, that a pro se complaint generally should not be dismissed without granting

the plaintiff leave to amend at least once, and that a pro se plaintiff's proposed amended

complaint should be construed to raise the strongest arguments it suggests." *Id.* at 140. Having

considered these principles, and having construed the Complaint to raise the strongest arguments

it suggests, the Court nevertheless concludes that amendment would be futile. There are no facts

in any of Plaintiff's submissions that suggest that the jurisdictional deficiencies discussed above

can be cured. *See id.* at 140 ("Leave to amend may properly be denied if the amendment would

be futile.") (internal quotation marks and brackets omitted); *Pudlin v. Office for (Not of) Civil*

*Rights of the United States Dep't of Educ.*, 186 F. Supp. 3d 288, 295 (S.D.N.Y. 2016) ("Leave to

amend would be futile in this case, for the subject matter jurisdiction deficiencies discussed

above are substantive and cannot be cured."). Accordingly, the Complaint is dismissed without

leave to amend.

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 23, 25, 26, 29) are

**GRANTED**; and it is further

**ORDERED** that the Complaint is **DISMISSED without prejudice**;[9] and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date:   May 19, 2017
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[9] "[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016). Similarly, "dismissal for want of personal jurisdiction is without prejudice." *Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013).